Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| NELSON VÁZQUEZ BÁEZ<br><br>Apelante<br><br>v.<br><br>OFFICE DEPOT PUERTO RICO, LLC<br><br>Apelado | KLAN202400994 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso número: CA2022CV03488<br><br>Sobre: Despido Injustificado; Represalias; Cobro de Comisiones |

Panel integrado por su presidenta, la jueza Ortiz Flores, la juez Aldebol Mora y la jueza Boria Vizcarrondo.

Aldebol Mora, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 14 de marzo de 2025.

Comparece la parte apelante, Nelson Vázquez Báez, y nos solicita que revoquemos la *Sentencia* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de Carolina, el 23 de octubre de 2024. Mediante dicho dictamen, el foro primario declaró Ha Lugar la solicitud de sentencia sumaria promovida por la parte apelada, Office Depot Puerto Rico, LLC. En consecuencia, el foro *a quo* desestimó con perjuicio la *Querella* incoada por la parte apelante y ordenó el archivo del caso sin especial imposición de costas ni honorarios de abogado(a).

Por los fundamentos que exponemos a continuación, se confirma el dictamen apelado.

### I

El 31 de octubre de 2022, Nelson Vázquez Báez (Vázquez Báez o apelante) radicó una *Querella* sobre despido injustificado, represalias y cobro de comisiones en contra de Office Depot Puerto

Rico, LLC (Office Depot o apelado).[1] La referida causa de acción fue instada al amparo del procedimiento sumario de la *Ley de Procedimiento Sumario de Reclamaciones Laborales*, Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 LPRA sec. 3118 *et seq.* (Ley Núm. 2-1961). En síntesis, Vázquez Báez indicó que, desde finales de diciembre de 2019, laboró ininterrumpidamente como empleado a tiempo indeterminado para Office Depot, cubriendo la posición de *Business Development Manager*. Alegó que, el 1 de septiembre de 2022, fue despedido injustificadamente y como un acto de represalia por presuntamente haber utilizado incorrectamente el programa *Motus*. Ello, en violación a la *Ley Sobre Despidos Injustificados*, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185a *et seq.* (Ley Núm. 80-1976) y a la *Ley Contra el Despido Injusto o Represalias a Todo Empleado[(a)] por Ofrecer Testimonio Ante un Foro Legislativo, Administrativo o Judicial*, Ley Núm. 115 de 20 de diciembre de 1991, según enmendada, 29 LPRA sec. 194 *et seq.* (Ley Núm. 115-1991). Según adujo, previo a su despido, había realizado varias quejas a su patrono sobre problemas en la implementación y funcionamiento del mencionado programa.

Vázquez Báez arguyó en la acción de epígrafe que, como consecuencia de lo anterior, Office Depot le adeudaba $120,000.00 por concepto de daños y angustias mentales, más los salarios y beneficios marginales dejados de devengar. Añadió que la compañía también le adeudaba $20,000.00 por comisiones, adicional a una cantidad similar por concepto de doble penalidad. En la alternativa, sostuvo que tenía derecho a la mesada e indemnización progresiva ascendente a $33,832.00.

---

[1] Apéndice A del recurso, págs. 1-3.

Por su parte, el 28 de noviembre de 2022, Office Depot presentó su alegación responsiva.[2] En esencia, negó los planteamientos esbozados en su contra y aclaró que Vázquez Báez fue contratado desde el 28 de diciembre de 2019 hasta el 31 de agosto de 2022. Argumentó que el despido de Vázquez Báez respondió al resultado de un proceso de investigación interna tras identificarse una suma alta de millaje y peajes informados por este como gastos de negocios. Alegó que dicha investigación había arrojado a que Vázquez Báez: (1) reclamó fraudulentamente como gastos de negocio $893.52 en gastos personales de millaje y peajes; (2) tenía un alto nivel de conocimiento de cómo funcionaba el sistema *Motus*. Según adujo, dichas acciones fueron deshonestas y justificaban el despido de Vázquez Báez.

Office Depot planteó, además, en su contestación a la *Querella* que Vázquez Báez admitió haber recibido pagos por un total de $893.52 por gastos personales reportados como gastos de negocios y había reembolsado dicha suma. Indicó que, durante el proceso de investigación interna, se le dio oportunidad a Vázquez Báez de explicar su proceder; sin embargo, este negó inicialmente haber reportado gastos personales como gastos de negocios, y solo lo admitió cuando fue confrontado con la evidencia de ello. Sostuvo que, ante la falta de ética, integridad y actos deshonestos de Vázquez Báez, tomó la decisión de despedirlo. Por otro lado, arguyó que le pagó a Vázquez Báez toda la compensación devengada y a la que tenía derecho bajo las leyes de Puerto Rico y la política de compensación aplicable de la compañía, por lo que no le debía suma alguna. A su vez, alegó que Vázquez Báez no estuvo involucrado en alguna actividad protegida que pudiera servir como base a una reclamación de represalia bajo la Ley Núm. 115-1991, *supra.*

---

[2] Apéndice B del recurso, págs. 4-8.

Luego de varios trámites procesales, el 21 de septiembre de 2023, Office Depot instó una *Moción de Sentencia Sumaria*.[3] Indicó que, luego de un proceso investigativo, en el cual Vázquez Báez fue entrevistado y tuvo la oportunidad de explicar su conducta, quedó evidenciado que este sometió fraudulentamente una solicitud de reembolso de los gastos de millaje y de peaje que no estaban relacionados con asuntos de trabajo, sino a gestiones personales. Planteó que dicha acción se realizó en incumplimiento con las normas establecidas por la entidad, las cuales eran de conocimiento de Vázquez Báez, pues este había sido adiestrado sobre el reembolso de gastos por el uso de su vehículo para asuntos de negocio. Según adujo, había confrontado a Vázquez Báez con la evidencia de lo anterior, específicamente con informes de millaje y gastos de peaje sometidos por el propio Vázquez Báez, y este acordó restituir el dinero que cobró indebidamente. Basado en ello, argumentó que no había controversia en que el despido de Vázquez Báez fue por justa causa, conforme establecía la Ley Núm. 80-1976, *supra*, y su jurisprudencia interpretativa, por lo que procedía la desestimación con perjuicio de la acción de epígrafe.

---

[3] Apéndice DD del recurso, págs. 91-117. Junto a su petitorio, Office Depot incluyó los siguientes documentos: (1) copia de la *Contestación a Primer Pliego de Interrogatorios, Requerimiento de Producción de Documentos y Admisiones*, cursada por Office Depot, con fecha del 2 de febrero de 2023; (2) copia parcial de la *Deposición* de Vázquez Báez, celebrada el 3 de marzo de 2023; (3) copia parcial de la *Deposición* de Alex Franco Díaz, celebrada el 25 de mayo de 2023; (4) copia parcial de la *Deposición* de Mirnaly Abraham Calderón, celebrada el 21 de marzo de 2023; (5) copia parcial de la *Deposición* de Alberto Rovira Montalvo, celebrada el 28 de marzo de 2023; (6) copia del *Office Depot, LLC Business Vehicle Reimbursement FAVR Program*, con fecha de efectividad y revisado el 1 de enero de 2022; (7) copia parcial de la *Deposición* de Dinorah Quiñones Meléndez, celebrada el 30 de mayo de 2023; (8) copia de correo electrónico sobre *Motus Information Update Required*, con fecha del 8 de febrero de 2022; (9) copia del *Manual del Asociado para Puerto Rico*, revisado en octubre de 2019; (10) copia del *BSD Investigation and Interview Findings – Nelson V[á]zquez*; (11) copia del *Preliminary Research*; (12) copia de una captura de pantalla del sistema *Motus*; (13) copia del *Acknowledgement of Indebtedness and Agreement to Pay*, con fecha del 12 de agosto de 2022; (14) copia del *Separation of Employment*, con fecha del 1 de septiembre de 2022; (15) copia del *Office Depot, LLC 2022 Business Solutions Division Quarterly Incentive Plan*; (16) copia de correo electrónico sobre *Member Services (Motus)*; (17) copia de la *Resolución* emitida el 9 de diciembre de 2022, notificada el 5 de enero de 2023, por la División de Apelaciones de la Secretaría Auxiliar de Asuntos Legales y Normas del Departamento del Trabajo y Recursos Humanos de Puerto Rico; (18) copia de la *Decisión del Secretario del Trabajo y Recursos Humanos*, emitida y notificada el 23 de junio de 2023. Véase, Apéndice DD del recurso, págs. 118-372.

Por otro lado, Office Depot sostuvo en su petitorio sumario que tampoco procedía la acción sobre represalias, toda vez que no nos encontrábamos ante un despido injustificado. Especificó que el despido de Vázquez Báez por incurrir en conducta deshonesta al someter información falsa sobre gastos por el uso de su vehículo no constituía represalias. Añadió que el notificar que presuntamente confrontaba problemas con la aplicación que la compañía utilizaba para calcular el millaje de negocios incurrido por sus empleados y empleadas no era actividad protegida bajo la Ley Núm. 115-1991, *supra.*

En cuanto a las alegaciones sobre el pago de comisiones, Office Depot arguyó que Vázquez Báez era inelegible porque fue despedido antes de concluir el trimestre para el cual reclamaba el referido pago, por lo que no era un empleado activo a la fecha del pago correspondiente. Aclaró que la política de la entidad establecía que únicamente serían elegibles para el pago de comisiones los empleados o las empleadas activas a la fecha de su pago. Por entender que el mencionado reclamo era inmeritorio, y por no existir hechos materiales en controversia, solicitó que dicha acción fuera desestimada sumariamente.

En respuesta, el 24 de octubre de 2023, Vázquez Báez se opuso.[4] Sostuvo que su despido fue injustificado y en represalia por haber presentado una queja interna sobre la implementación y funcionamiento del sistema *Motus.* Arguyó que las políticas y normas sobre el programa de reembolso de los gastos por el uso de su vehículo en el trabajo –que presuntamente implementaba Office Depot– nunca se las notificaron y eran inexistentes. Reiteró que

---

[4] Apéndice LL del recurso, págs. 385-408. Vázquez Báez adjuntó a su moción los siguientes documentos: (1) copia parcial de la *Deposición* de Alex Franco Díaz, celebrada el 25 de mayo de 2023; (2) copia parcial de la *Deposición* de Vázquez Báez, celebrada el 3 de marzo de 2023; (3) copia parcial de la *Deposición* de Alberto Rovira Montalvo, celebrada el 28 de marzo de 2023; (4) copia parcial de la *Deposición* de Mirnaly Abraham Calderón, celebrada el 21 de marzo de 2023. Véase, Apéndice LL del recurso, págs. 409-443.

durante el proceso judicial se probaría que su despido fue como consecuencia de las reclamaciones internas que realizó a través de sus supervisores inmediatos sobre problemas con la aplicación *Motus*. A su vez, planteó que la compañía aún le adeudaba las comisiones generadas durante su último trimestre laborado. Sobre ese particular, abundó que Office Depot se negó a satisfacer dicha deuda utilizando como base una política interna que tampoco le fue notificada. Asimismo, argumentó que existían hechos materiales en controversia que impedían la adjudicación sumaria del pleito.

Evaluadas las posturas de las partes, el 23 de octubre de 2024, el Tribunal de Primera Instancia emitió y notificó la *Sentencia* que nos ocupa, mediante la cual declaró Ha Lugar la solicitud de sentencia sumaria promovida por Office Depot.[5] En su consecuencia, desestimó con perjuicio la acción de epígrafe y ordenó el archivo del caso sin especial imposición de cosas ni honorarios de abogado(a). En particular, el foro primario desglosó las siguientes determinaciones de hechos:

1. El [q]uerellante comenzó a trabajar en Office Depot el 28 de diciembre de 2019.
2. Durante su empleo con Office Depot, el [q]uerellante se desempeñó como *Account Manager* de la categoría de *Cleaning and Breakroom and Amenities* de la División Comercial.
3. El [q]uerellante estaba a cargo de mercadear y vender los productos ofrecidos por Office Depot en esa categoría de *Cleaning and Breakroom and Amenities* que incluye, entre otros, productos de limpieza y mantenimiento.
4. Como parte de sus funciones, el [q]uerellante visitaba clientes a través de toda la Isla.
5. El [q]uerellante calendarizaba sus visitas a clientes de lunes a jueves. Usualmente no calendarizaba citas para los viernes, ya que los viernes participaba de una reunión del equipo de ventas que se llevaba a cabo en el Centro de Distribución de Office Depot.
6. Para visitar a los clientes a través de la Isla, el [q]uerellante utilizaba su vehículo personal.
7. Desde el año 2019 hasta su fecha de despido, Office Depot reembolsaba al [q]uerellante sus gastos por el uso de su vehículo a base de las millas recorridas y peaje pagado en asuntos de negocios.
8. Luego del [q]uerellante haber comenzado a trabajar en Office Depot, la [c]ompañía comenzó a utilizar una aplicación (*app*) de un proveedor externo conocida como Motus. Esta aplicación funciona con un *GPS Tracker* y se

---

[5] Apéndice QQ del recurso, págs. 452-473.

instala en el celular del empleado para calcular el millaje recorrido.

9. Se puede acceder a la información de millaje y peajes recopilada en Motus[,] tanto a través de un teléfono celular como a través de una computadora.

10. Cuando Office Depot comenzó a utilizar Motus en Puerto Rico, Alex Franco, entonces el *Managing Director* de Florida, Puerto Rico y las Islas Vírgenes, brindó un adiestramiento a toda la fuerza de ventas de la División Comercial, incluyendo al [q]uerellante, de cómo utilizar la aplicación, para lo cual utilizó una presentación en *PowerPoint*.

11. Para utilizar Motus, el usuario enciende la aplicación al comenzar un viaje de negocios y lo apaga cuando termina ese viaje de negocios.

12. A fin de cada mes, en Motus aparece el total de millas que el sistema registró como millas de negocios para reembolso. El usuario entonces las valida y las somete (*submit*).

13. Previo a que el usuario someta (*submit*) las millas a Motus, aparece un mensaje en la pantalla, ya sea de la computadora o el celular, requiriéndole al usuario que confirme el envío (*submission*) del número total de millas reclamadas para el mes del cual se trate, y que entre el millaje de su vehículo a fin de mes. El usuario tiene que confirmar el número de millas reclamado en Motus, o el sistema no permite someter (*submit*) las millas.

14. De tener cualquier problema con la aplicación y/o necesitar aclarar cualquier duda, los empleados tenían disponible y podían llamar al [D]epartamento de [S]ervicio al [C]liente de Motus.

15. El [q]uerellante se comunicó en al menos cuatro (4) ocasiones con el [D]epartamento de [S]ervicio al [C]liente de Motus para solicitar ayuda y solicitar que le resolvieran alegados problemas que tenía con la [a]plicación ya que, entre otras situaciones, la aplicación se le congelaba.

16. El documento titulado *Business Vehicle Reimbursement Program* contiene la política de Office Depot sobre el reembolso de gastos atribuibles a la utilización de un vehículo de motor personal en el trabajo.

17. El *Business Vehicle Reimbursement Program* define lo que constituye millaje de negocio reembolsable, y establece y explica lo que constituye un viaje relacionado al negocio y lo que no constituye un viaje relacionado al negocio.

18. La Administradora de Motus, Dee Metzger, enviaba todos los años por correo electrónico el *Business Vehicle Reimbursement Program* a los usuarios del sistema.

19. El 8 de febrero de 2022, la Administradora de Motus, Dee Metzger, envió al [q]uerellante a su correo electrónico de negocios de Office Depot el *Business Vehicle Reimbursement Program* correspondiente al año 2022.

20. El *Business Vehicle Reimbursement Program* establece que el incumplimiento con esa política para ganancia personal del empleado conllevará la inelegibilidad inmediata para participar en el programa, y lo expone a medidas disciplinarias por parte de la [c]ompañía.

21. El Manual del Asociado para Puerto Rico establece que: "[s]iempre debemos comportarnos y realizar nuestros negocios con *honestidad e integridad inquebrantables*".

22. Para el 12 de agosto de 2022, Alberto Rovira se despeñaba como *Enterprise Loss Prevention and Safety Manager* y fue la persona que llevó a cabo la investigación relacionada con la sumisión del [q]uerellante para [el] reembolso de millaje y peajes no relacionados a asuntos de negocio.

23. Como parte de la investigación sobre las millas sometidas por el [q]uerellante para [el] reembolso como *[sic]* millas recorridas en asuntos de negocios[,] llevada a cabo por el Departamento de *Loss Prevention* de Office Depot, Alberto Rovira y Mirnaly Abraham entrevistaron al [q]uerellante a través de una reunión por el mecanismo de videoconferencia conocido como *Teams*.

24. Durante esa entrevista, Alberto Rovira preguntó al [q]uerellante sobre su trabajo, su supervisora, y sobre la aplicación Motus.

25. Como parte de la entrevista, Alberto Rovira [le] mostró al [q]uerellante una presentación en *PowerPoint* y fueron diapositiva por diapositiva (*slide by slide*) discutiendo la información en esa presentación que detallaba las millas que le fueron pagadas al [q]uerellante y que no eran por viajes de negocio.

26. La presentación de *PowerPoint* detalla millas reclamadas por el [q]uerellante recorridas en viernes, sábados y domingos, y de martes a jueves entre 7:00 p.m. y 7:00 a.m., además de 183 millas añadidas de forma manual correspondiente a un Jueves Santo, así como peajes reclamados por el [q]uerellante durante estos mismos días. Ninguna de estas millas fue recorrida para asuntos de negocios.

27. La investigación demostró que, entre el 19 de enero de 2021 y el 30 de junio de 2022, el [q]uerellante reclamó indebidamente reembolso de 3,157 millas durante viernes, sábados y domingos, y de lunes a jueves entre 7:00 p.m. y 7:00 a.m., y de $25.35 en peajes que no se incurrieron para asuntos relacionados con el negocio sino para asuntos personales.

28. Conforme a los hallazgos de la investigación, el [q]uerellante reclamó indebidamente y se le pagó un total de $893.52 por millaje y peajes que no estaban relacionados con asuntos de negocio.

29. El [q]uerellante aceptó devolver la suma de $893.52 ya que reconoció que no tenía derecho a haber recibido esa cantidad[,] según surge del *Acknowledgment of Indebtedness and Agreement to Pay* firmado por [e]ste.

30. El [q]uerellante firmó un *Acknowledgment of Indebtedness and Agreement to Pay*, mediante el cual se comprometió a pagar la cantidad de $893.52 con el entendimiento de que no se le hicieron promesas de inmunidad de ser encausado criminalmente o de continuación de empleo ("no promises of i[m]munity from prosecution or continued employment have been made").

31. El 1 de septiembre de 2022, el [q]uerellante fue despedido por deshonestidad, por no utilizar buen juicio, y por su incumplimiento con las políticas de Office Depot sobre reembolso de gastos de vehículo y sus *Core Values*.

32. La razón por la cual el [q]uerellante entiende que tomaron represalias en su contra y lo despidieron fue por haber reportado millaje que no estaba relacionado al negocio.

33. Lo que el [q]uerellante caracteriza como quejas para establecer una conducta protegida, fueron informes a un tercero, Motus, sobre problemas que [e]ste alegadamente tenía con la [a]plicación.

34. El [q]uerellante no presentó queja alguna que se pueda caracterizar como conducta protegida, sino que[,] en [el] curso ordinario del negocio[,] informó a su supervisora "Mirnaly [Abraham], está pasando esto" para que ella tuviera conocimiento, y [e]sta le respondía "llama a Motus" y él entonces llamaba a Motus.

35. El propio [q]uerellante reconoce que esas "quejas" eran más bien una notificación y no una "queja" como tal.

36. El [q]uerellante notificó esos problemas con la aplicación Motus desde que la misma se comenzó a utilizar en Office Depot.

37. Una vez el [q]uerellante llamaba Departamento de Servicio al Cliente, un tercero que no es Office Depot, es decir, Motus, atendía la situación, le resolvían el problema y, luego de la llamada le enviaban un correo electrónico que le informaba el número de su caso.

38. El [q]uerellante tomó el adiestramiento compulsorio sobre el *Business Solutions Division Quarterly Incentive Plan* para el año 2022, el cual describe el método que Office Depot utiliza para pagar comisiones.

39. Según la Política de Office Depot, para ser elegible al pago de comisiones para un trimestre o *quarter* en particular, el empleado tiene que completar ese trimestre o *quarter*. De lo contrario, no es elegible para el pago de comisiones.

40. En específico, el *Office Depot, LLC 2022 Business Solutions Division Quarterly Incentive Plan* dispone que "*[i]f an [e]ligible [a]ssociate terminates employment with the [c]ompany during or after the Eligible Service Period but prior to the payment date for any reason other than [d]eath, [d]isability or a [r]eduction in [f]orce, the associate will not be [e]ligible for any payment under the Incentive Plan unless such payment is fully earned prior to termination of employment and is required by law*".

41. El tercer trimestre o *quarter*, por el cual el [q]uerellante reclama, comprende los meses de julio, agosto y septiembre.

42. El pago de las comisiones correspondientes a ese tercer trimestre o *quarter* se hace en noviembre[,] después de que ese trimestre ha finalizado.

43. A la fecha de su terminación de empleo, [el] 1 de septiembre de 2022, el [q]uerellante no había terminado ese tercer trimestre o *quarter*, ya que faltaba el mes de septiembre de 2022 para completarlo.

44. A la fecha de pago de las comisiones correspondientes a ese tercer trimestre o *quarter* se hace en noviembre, el [q]uerellante ya no era empleado de Office Depot[,] pues fue despedido el 1 de septiembre de 2022.[6]

---

[6] Apéndice QQ del recurso, págs. 455-458.

El foro primario concluyó que las razones que ocasionaron la terminación de empleo de Vázquez Báez constituían justa causa para su despido, a tenor con lo dispuesto en la Ley Núm. 80-1976, *supra*, toda vez que dicha parte había sometido para reembolso gastos de millaje y peajes que no estaban relacionados con su empleo, y cobró indebidamente por estos. Indicó que dicha actuación fue en claro incumplimiento con las normas y políticas de Office Depot, cuyo *Manual del Asociado de Office Depot* requería que sus empleados y empleadas realizaran su trabajo con honestidad e integridad inquebrantable. Igualmente, señaló que el *Business Vehicle Reimbursement Program* establecía expresamente que el utilizar el programa de reembolso de gastos de peaje y millaje para ganancia personal conllevaría la inelegibilidad inmediata para participar en dicho programa, así como la posibilidad de estar sujeto a medidas disciplinarias. Especificó que, entre las conductas contempladas en dicho manual, estaba el reportar falsamente como gastos de negocio millaje y peaje para asuntos personales.

En particular, el foro apelado detalló que, a pesar de haber sido adiestrado acerca del sistema *Motus* y sobre la política de Office Depot en cuanto al reembolso de gastos asociados al uso de su vehículo personal, una investigación llevada a cabo por la mencionada entidad reflejó que, durante los años 2021 y 2022, Vázquez Báez consistentemente sometió y obtuvo pagos por gastos de su vehículo que no se relacionaban con tareas del trabajo, sino que correspondían a asuntos personales. Coligió que la conducta deshonesta de Vázquez Báez fue tan patente que, al ser confrontado por Office Depot, accedió a restituir el dinero que cobró indebidamente y reconoció que dicha restitución no incluía promesa alguna de continuación de empleo. Sobre lo anterior, concluyó que tal conducta, no solo era contraria a las normas y políticas de Office Depot, sino que denotaban una ausencia de valor moral, lo cual

justificaba el despido. Por consiguiente, determinó que procedía la desestimación de la causa de acción por despido injustificado.

En cuanto a la acción sobre represalias, el foro juzgador resolvió que no había controversia de hechos en cuanto a que Vázquez Báez no había establecido su participación en una actividad protegida al amparo de la Ley Núm. 115-1991, *supra*. Señaló que el quejarse o haber notificado problemas con el funcionamiento de la aplicación *Motus* era insuficiente para sustentar su derecho a reclamar represalias, pues ello no se consideraba una práctica patronal ilícita. Añadió que Vázquez Báez tampoco pudo establecer el primer elemento de un caso *prima facie* de represalias, toda vez que no demostró la existencia de un nexo causal. En vista de ello, resolvió que Vázquez Báez no tenía una causa de acción válida de represalias y, por lo tanto, procedía la desestimación con perjuicio de dicha reclamación.

Sobre la reclamación de comisiones adeudadas, el tribunal sentenciador expresó que las partes válidamente pactaron que, para ser elegible al pago de comisiones para un trimestre en particular, el empleado tenía que completar ese trimestre. Enfatizó que, de lo contrario, el empleado no era elegible para el pago de comisiones, según establecía el *Business Solutions Division Quarterly Incentive Plan*, vigente durante el año 2022. Según indicó, a la fecha del despido de Vázquez Báez el 1 de septiembre de 2022, este no había terminado el trimestre en cuestión, ya que faltaba completar todo el mes de septiembre. Concluyó, por tanto, que Vázquez Báez no tenía derecho al pago de las comisiones reclamadas, por lo que procedía también la desestimación con perjuicio de dicha causa de acción.

Inconforme, el 4 de noviembre de 2024, la parte apelante acudió ante esta Curia mediante el recurso de epígrafe y señaló los siguientes errores:

Erró el Honorable Tribunal de Primera Instancia al haber desestimado sumariamente todas las causas de acción del apelante relacionadas con su despido, no obstante *[sic]* que existen varios hechos en controversia que dependen[,] a su vez[,] de aspectos de credibilidad, así como del análisis e interpretación de la Ley General de Despido Injustificado (Ley [Núm.] 80 del 1976, según enmendada) y la Ley de Represalias (Ley [Núm.] 115 d[e]l 1991[,] según enmendada).

Erró el Honorable Tribunal de Primera Instancia al haber desestimado sumariamente las reclamaciones de salarios[,] por concepto de comisiones no devengadas del apelante[,] no obstante *[sic]* que existen varios hechos en controversia sobre dicha reclamación.

En cumplimiento con nuestra *Resolución* del 8 de noviembre de 2024, la parte apelada compareció mediante *Alegato de la Parte Apelada* el 11 de diciembre del mismo año.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

### A

Sabido es que la *Ley de Procedimiento Sumario de Reclamaciones Laborales*, Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 LPRA sec. 3118 *et seq.* (Ley Núm. 2-1961), establece un procedimiento de naturaleza sumaria para aquellos casos que versen sobre reclamaciones de una persona obrera o empleada en contra de su patrono, referentes a cualquier derecho o beneficio, o cualquier suma por concepto de compensación por trabajo o labor realizados, o en ocasión a un despido de su empleo sin justa causa, todo en aras de abreviar los trámites pertinentes a las mismas, de manera que resulte en un proceso menos oneroso para la persona trabajadora. 32 LPRA sec. 3118; *Peña Lacern v. Martínez Hernández et al.*, 210 DPR 425 (2022); *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 164 (2021); *León Torres v. Rivera Lebrón*, 204 DPR 20 (2020); *Ruiz Camilo v. Trafon Group*, Inc., 200 DPR 254 (2018). Su alcance se extiende a varios estatutos laborales, entre estos, las querellas sobre salarios, beneficios y derechos laborales.

*Ruiz Camilo v. Trafon Group, Inc.*, supra, pág. 265. La naturaleza de esta reclamación exige celeridad en su trámite para, así, cumplir con el fin legislativo de proteger el empleo, desalentar los despidos injustificados y proveer a la persona obrera despedida suficientes recursos económicos entre un empleo y otro. *León Torres v. Rivera Lebrón*, supra. A su vez, el Tribunal Supremo de Puerto Rico ha enfatizado que las disposiciones de la pieza legislativa antes mencionada se deberán interpretar de manera liberal a favor de la persona empleada. Ello, para equiparar la desigualdad de los medios económicos que exista entre las partes. *Vizcarrondo Morales v. MVM, Inc.*, 174 DPR 921, 928-929 (2008).

Cónsono con lo anterior, la Sección 3 de la Ley Núm. 2-1961, 32 LPRA sec. 3120, establece, en lo pertinente, que en los casos tramitados con arreglo a dicho estatuto "se aplicarán las Reglas de Procedimiento Civil en todo aquello que no esté en conflicto con las disposiciones específicas de las mismas o con el carácter sumario del procedimiento establecido por esta ley". *Díaz Santiago v. PUCPR et al.*, 207 DPR 339, 348 (2021). Es decir, se recurrirá a las Reglas de Procedimiento Civil, 32 LPRA Ap. V, cuando estas no contravengan lo dispuesto en la Ley Núm. 2-1961, *supra,* o prolonguen innecesariamente el carácter sumario del procedimiento. *Íd.*

**B**

Por otro lado, la *Ley Sobre Despidos Injustificados,* Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185a *et seq.* (Ley Núm. 80-1976), tiene el propósito de proteger a la persona empleada de actuaciones arbitrarias del patrono e imponer remedios económicos que desalienten la práctica de despedir a las personas empleadas injustificadamente. *Ruiz Mattei v. Commercial Equipment Finance, Inc.*, 2024 TSPR 68, resuelto el 21 de junio de 2024; *González Méndez v. Acción Social et al.*, 196 DPR 213, 229

(2016); *SLG Torres-Matundan v. Centro Patología,* 193 DPR 920, 929 (2015). Dicha política pública se sustenta en que el trabajo tiene una función social trascendental, tanto en el ámbito individual como en el colectivo. A esta realidad responde la afirmación de que el trabajo tiene un profundo significado ético, porque mediante este la persona aporta al bien común y se autorrealiza.

Las protecciones conferidas por la Ley Núm. 80-1976, *supra,* se extienden a toda persona empleada que: (1) trabaja para un patrono mediante remuneración; (2) haya sido contratada sin tiempo determinado, y (3) sea despedida sin que mediara una justa causa. 29 LPRA sec. 185a. Presentes estas circunstancias, la persona empleada, así despedida, tiene derecho a recibir de su patrono el pago de una indemnización, típicamente denominada como la *mesada,* cuya cuantía dependerá de la duración del empleo y del sueldo que devengaba. *Íd.*; *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 230 (2015); *Whittenburg v. Col. Ntra. Sra. Del Carmen*, 182 DPR 937, 950 (2011). Por tal razón, es importante destacar que "el estándar de justa causa es el requisito requerido en la mayoría de los países del mundo para convalidar las acciones de los empleadores. Si el patrono despide injustificadamente a un trabajador estaría entonces sujeto a la sanción económica que impone el estatuto protector". C. Zeno Santiago, *El Despido y la Política Social en Nuestro Estado de Derecho*, 34 Rev. Jur. UIPR 213, 217 (2000).

Ahora bien, nuestro ordenamiento jurídico no prohíbe absolutamente el despido de una persona empleada; más bien, castiga el despido sin justa causa. *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 982 (2022); *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 904 (2011). En ese sentido, la Ley Núm. 80-1976, *supra,* considera injustificado el despido que se hace por mero capricho del patrono, y no guarda relación con la necesidad de

asegurar el buen y normal funcionamiento de un establecimiento. 29 LPRA sec. 185b; *León Torres v. Rivera Lebrón*, 204 DPR 20, 38 (2020).

Cónsono con lo anterior, el Artículo 2 de la Ley Núm. 80-1976, 29 LPRA sec. 185b, instituye posibles situaciones en las cuales existe justa causa para el despido. En particular, desglosa las siguientes circunstancias:

(a) Que el obrero siga un patrón de conducta impropia o desordenada.

(b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento

(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

(d) Cierre total, temporero o parcial de las operaciones del establecimiento. […]

(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido.

[…]

Según lo precitado, la Ley Núm. 80-1976, *supra,* no establece específicamente qué constituye un despido injustificado, pero desglosa varios escenarios o circunstancias que liberan al patrono de responsabilidad. *Segarra Rivera v. Int'l. Shipping et al.,* supra, pág. 983; *Indulac v. Unión,* 207 DPR 279, 298 (2021). Algunas de estas circunstancias están basadas en conducta atribuible a la persona empleada, mientras que otras responden al curso decisorio

de la gerencia empresarial. *Íd.* En ese sentido, las circunstancias constitutivas de justa causa, según previamente esbozados, constituyen meros ejemplos de situaciones asociadas a un despido. *Indulac v. Unión*, supra, pág. 299. Por lo tanto, el precitado estatuto no prevé el universo de incidencias que puedan surgir en un entorno laboral y que desemboquen en la cesantía de una persona empleada. *Íd.*

Es decir, el citado Artículo 2 de la Ley Núm. 80-1976, *supra*, no dispone una lista taxativa de las circunstancias que pueden dar lugar a un despido por justa causa. *Indulac v. Unión*, supra, pág. 299. Ello obedece a que el mencionado estatuto no favorece el despido como sanción a la primera falta cometida por una persona empleada. *Íd.*, págs. 299-300, citando a *Srio. del Trabajo v. I.T.T.*, 108 DPR 536, 542-543 (1979). Sin embargo, la referida norma no es una absoluta. *Íd.*, pág. 300. El Tribunal Supremo de Puerto Rico ha resuelto que existen circunstancias en las que una sola ofensa o primera falta pudieran justificar un despido. *Íd.* Así, pues, este curso de acción podría considerarse justificado si dicha acción u omisión, por su gravedad y potencial de agravio, pone en riesgo la seguridad, el orden y la eficiencia que constituye el funcionamiento de la empresa. *Íd.*

Cónsono con lo anterior, al amparo de la Ley Núm. 80-1976, *supra*, se ha reconocido que una sola ofensa puede constituir justa causa para el despido. *Indulac v. Unión*, supra. Ahora bien, dicha falta debe ser de tal seriedad o naturaleza que revele una actitud o un detalle del carácter de la persona empleada, tan lesivo a la paz y al buen orden de la empresa, que constituiría imprudencia esperar su reiteración para separarla del establecimiento. *Íd.*; *Rivera v. Pan Pepín*, 161 DPR 681, 690 (2004); *Delgado Zayas v. Hosp. Int. Med. Avanzada*, 137 DPR 643 (1994); *Aut. Edif. Púb. v. Unión Indep. Emp. A.E.P.*, 130 DPR 983, 994 (1992). De modo que lo esencial es que,

del agravio perpetrado por la persona empleada ponga de manifiesto una condición, que dentro del contexto del empleo sea inaceptable o intolerable, independientemente de que se trate de una primera falta. *Íd.*, págs. 300-301; *Torres Solano v. P.R.T.C.*, 127 DPR 499, 516 (1990).

## C

La *Ley Contra el Despido Injusto o Represalias a Todo Empleado[(a)] por Ofrecer Testimonio Ante un Foro Legislativo, Administrativo o Judicial*, Ley Núm. 115 de 20 de diciembre de 1991, según enmendada, 29 LPRA sec. 194 *et seq.* (Ley Núm. 115-1991), provee una protección para la persona empleada frente a represalias que tome un patrono contra esta por haber provisto testimonio, expresión o información en algún foro judicial, legislativo o administrativo. *Feliciano Martes v. Sheraton*, 182 DPR 368, 392 (2011); *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345, 361 (2011); *Ocasio v. Kelly Servs.*, 163 DPR 653, 684 (2005). A tenor con ello, se le otorga a la persona empleada una causa de acción si, por realizar una actividad protegida, es despedida, amenazada o discriminada en el empleo. *S.L.G. Rivera Carrasquillo v. A.A.A.*, supra; *Rivera Prudencio v. Mun. de San Juan*, 170 DPR 149, 159 (2007); *Cintrón v. Ritz Carlton*, 162 DPR 32, 37 (2004).

Por otro lado, mediante la precitada Ley Núm. 115-1991, *supra*, la Asamblea Legislativa de Puerto Rico creó una presunción de violación a este estatuto a favor de la parte querellante. *S.L.G. Rivera Carrasquillo v. A.A.A.*, supra; *Marín v. Fastening Systems, Inc.*, 142 DPR 499 (1997). En ese sentido, la persona empleada puede probar la violación mediante evidencia directa o circunstancial, o establecer un caso *prima facie* de violación, tras evidenciar haber participado de una actividad protegida por la Ley Núm. 115-1991, *supra*, y consecuentemente, haber sido despedida, amenazada o discriminada. 29 LPRA sec. 194a(c). Una vez la persona empleada establezca lo

anterior, "el patrono deberá alegar y fundamentar una razón legítima y no discriminatoria para el despido". *Íd.* Si el patrono logra establecerlo, la persona empleada debe demostrar que la razón alegada por el patrono realmente era un mero pretexto para el despido. *Íd.*; *Feliciano Martes v. Sheraton,* supra; *S.L.G. Rivera Carrasquillo v. A.A.A.,* supra, pág. 362; *Hernández v. Espinosa,* 145 DPR 248 (1998).

**D**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Jiménez Soto y otros v. Carolina Catering Corp. y otros*, 2025 TSPR 3, resuelto el 14 de enero de 2025; *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023); *Oriental Bank v. Caballero García*, 212 DPR 671 (2023); *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601 (2023); *Acevedo y otros v. Depto. Hacienda y otros*, 212 DPR 335 (2023); *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2023). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964 (2022). Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping*

*et al.*, supra. Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Íd.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García*, supra; *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 111 (2015).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra*, pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Íd.*

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.* De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, *supra,* la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. *Íd.,* pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra, pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o

credibilidad. *Cruz, López v. Casa Bella y otros*, 2024 TSPR 47, 213 DPR ___ (2024); *Acevedo y otros v. Depto. Hacienda y otros*, supra; *Segarra Rivera v. Int'l. Shipping et al.*, supra. Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Jiménez Soto y otros v. Carolina Catering Corp. y otros*, supra; *Banco Popular de Puerto Rico v. Zorrilla Posada y otro*, 2024 TSPR 62, resuelto el 17 de junio de 2024; *Oriental Bank v. Caballero García,* supra, pág. 7; *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Ahora bien, el Foro de última instancia ha reiterado que cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, pues debe tratarse de una incertidumbre que permita concluir que existe una controversia real sobre hechos relevantes y pertinentes. *Íd.* Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.* No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. y otro v. ELA y otros*, supra.

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de

Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria. *Jiménez Soto y otros v. Carolina Catering Corp. y otros*, supra; *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro*, 2025 TSPR 1, resuelto el 7 de enero de 2025; *Banco Popular de Puerto Rico v. Zorrilla Posada y otro*, supra; *Birriel Colón v. Econo y otro*, 2023 TSPR 120, 213 DPR ___ (2023); *Serrano Picón v. Multinational Life Ins.*, supra; *González Meléndez v. Mun. San Juan et al.*, supra; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). Por ello, nuestra revisión es una *de novo* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, así como de su jurisprudencia interpretativa. *González Meléndez v. Mun. San Juan et al.*, supra. A tenor con la referida normativa, dicha revisión se realizará de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el foro de origen y realizando todas las inferencias permisibles a su favor. *Birriel Colón v. Econo y otro*, supra; *Meléndez González et al. v. M. Cuebas*, supra, pág. 118. De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho. *González Meléndez v. Mun. San Juan et al.,* supra.

Esbozada la norma jurídica, procedemos a aplicarla al recurso antes nos.

**III**

La parte apelante sostiene en su primer error señalado que el Tribunal de Primera Instancia incidió al desestimar sumariamente todas las causas de acción relacionadas con su despido, aun cuando existen hechos en controversia que dependen de aspectos de credibilidad, así como del análisis e interpretación de la Ley Núm. 80-1976, *supra*, y la Ley Núm. 115-1991, *supra*. Como segundo y último señalamiento de error, plantea que el foro primario erró al desestimar sumariamente las reclamaciones de salarios, por concepto de comisiones no devengadas, aun cuando existen hechos en controversia sobre dicha reclamación. Por estar relacionados entre sí, discutiremos los referidos errores en conjunto.

Hemos examinado cuidadosamente el expediente ante nos, los escritos de las partes, así como la normativa aplicable y concluimos que el Tribunal de Primera Instancia no erró en su determinación. Nos explicamos.

En esencia, la parte apelante sostiene que existen hechos materiales en controversia que impiden la adjudicación sumaria de la acción de epígrafe. Es decir, el apelante cuestiona las determinaciones de hechos enumeradas por el foro primario y entiende que persisten controversias que ameritan la celebración de un juicio plenario.

En cumplimiento con la normativa vigente sobre la revisión de una sentencia sumaria, evaluamos *de novo* la evidencia documental que tuvo el foro sentenciador ante su consideración, así como los planteamientos realizados por la parte apelante al cuestionar las determinaciones de hechos alcanzadas en la *Sentencia* que nos ocupa. Basado en ello, concluimos que los cuestionamientos realizados por el apelante no se encuentran apoyados en la evidencia que emana del expediente ante nos. Contrario a lo señalado por el apelante, las determinaciones de hechos realizadas por el foro de

primera instancia están sustentadas en la prueba presentada por las partes, a través de la moción de sentencia sumaria y su oposición. Lo anterior corresponde a la credibilidad y el valor probatorio que el foro *a quo* dio a una evidencia documental presentada para probar un hecho, versus la evidencia documental que la otra parte presentó para controvertirlo. Si bien, como foro revisor, nos encontramos en la misma posición que el foro apelado al evaluar una solicitud de sentencia sumaria, la argumentación de la parte apelante no nos mueve a modificar la apreciación que el tribunal primario hizo sobre la evidencia que obra en el caso de autos. De una minuciosa revisión al expediente, concluimos que el foro *a quo* apoyó totalmente sus determinaciones de hechos en la prueba que surge del expediente. La parte apelante, por el contrario, no presentó prueba convincente ni que lograra controvertir las alegaciones esbozadas en la solicitud de sentencia sumaria instada por la parte apelada. Por lo tanto, colegimos que no existen hechos materiales en controversia que impidan la adjudicación sumaria del caso.

Superado lo anterior, nos resta revisar si el foro *a quo* aplicó correctamente el derecho pertinente. En su recurso, el apelante alega que su despido fue injustificado y en represalia, en contravención a las protecciones establecidas en la Ley Núm. 80-1976, *supra*, y la Ley Núm. 115-1991, *supra*. Especifica que lo despidieron por realizar unas quejas internas sobre problemas que confrontaba con la aplicación *Motus* al solicitar el reembolso del millaje y peaje de su vehículo para asuntos de trabajo. Por su parte, el apelado sostiene que el despido fue justificado porque la parte apelante solicitó fraudulentamente unos reembolsos, pero por asuntos personales y no laborales, contrario las normas y políticas de la compañía, contenidas tanto en el *Manual del Asociado de Office Depot* como en el *Business Vehicle Reimbursement Program*. Sobre

estos últimos documentos, el apelante argumenta que nunca le fueron notificados y eran inexistentes.

Contrario a lo propuesto por la parte apelante, la prueba documental demuestra, no solo que las referidas normas y políticas de Office Depot le fueron notificadas, sino que, a sabiendas, las violentó. De los documentos ante nos surge que, luego de una investigación interna sobre los reembolsos solicitados por el apelante mediante la aplicación de *Motus*, este adeudaba $893.52 por millaje y peaje de su vehículo destinados a asuntos personales durante el año 2021 y 2022. Confrontado con dicha prueba, el apelante decidió restituir el dinero que cobró indebidamente a su patrono, sin promesa de inmunidad. Dicha actuación, durante ese término, constituye justa causa para el despido conforme dispone la Ley Núm. 80-1976, *supra*, tal y como lo concluyó el foro juzgador.

En cuanto a la acción de represalias, el apelante no probó su contención con evidencia documental directa o circunstancial, ni estableció un caso *prima facie* de violación, pues ni siquiera demostró haber participado de una actividad protegida por la Ley Núm. 115-1991, *supra*, y haber sido despedido, amenazado o discriminado por ello. El foro de origen llegó a igual conclusión luego de interpretar el citado estatuto.

Por último, sobre las comisiones presuntamente adeudadas, se desprende de los documentos revisados que, para poder ser beneficiaria de tales comisiones, la persona empleada debía trabajar durante la totalidad del trimestre reclamado. Es decir, tenía que trabajar los tres meses completos que componen el trimestre. En el caso de autos, el apelante fue despedido el 1 de septiembre de 2022, mientras que el trimestre culminaba el 30 de septiembre de ese año. Al no completar la totalidad del periodo requerido para reclamar las comisiones, el apelante está impedido de cobrarlo, por lo que Office Depot no le adeuda cantidad alguna a esos efectos, conforme lo

correctamente resuelto por el foro apelado. En vista de ello, los errores señalados no se cometieron.

En virtud de lo anterior, colegimos que el Tribunal de Primera Instancia no erró al emitir la *Sentencia* desestimando con perjuicio la *Querella* en contra de la parte apelada, y ordenando el archivo del caso sin especial imposición de costas ni honorarios de abogado(a). En fin, al evaluar concienzuda y ponderadamente *de novo* los eventos procesales al palio de la normativa jurídica antes esbozada, coincidimos con la determinación del foro apelado.

**IV**

Por las razones que anteceden, confirmamos el dictamen apelado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones